**UNITED STATES of America ex rel. James P. CARAFAS, Petitioner,**

v.

**Hon. J. Edin LaVALLEE, Warden of Auburn Prison, Auburn, New York (Successor to Hon. Robert E. Murphy), Respondent.**

**Civ. No. 9657.**

United States District Court
N. D. New York.

May 2, 1966.

James P. Carafas, in pro. per., Lawrence W. McKeown, Mineola, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Albany, N. Y., for respondent; Barry Mahoney, Asst. Atty. Gen., New York City, Joseph R. Castellani, Asst. Atty. Gen., Albany, N. Y., of counsel.

JAMES T. FOLEY, Chief Judge.

Memorandum—Decision and Order

This petitioner and his wife, the latter not a party in this habeas corpus proceeding, were convicted after trial by jury verdict in Nassau County, New York, in November of 1960, of the crimes of Burglary third degree and Grand Larceny second degree. In November 1960, the wife was sentenced to concurrent terms of 1½–5 years, and on December 13, 1960 petitioner was sentenced to concurrent terms of 3–5 years. These judgments of convictions were affirmed, no opinion. (14 A.D.2d 886, 1961, 218 N.Y.S.2d 536). The Court of Appeals, New York, affirmed, no opinion. (11 N.Y.2d 891, 227 N.Y.S.2d 926, 182 N.E. 2d 413, 1962). Remittitur of that Court was amended to show the unreasonable search and seizure question was presented and passed upon. (Carafas v. New York, 11 N.Y.2d 969, 229 N.Y.S.2d 417, 183 N.E.2d 697, 1963). Certiorari was denied in 372 U.S. 948, 83 S.Ct. 944, 9 L.Ed.2d 973 (1963).

Then, the federal procedure of habeas corpus was invoked. No matter the diplomatic camouflage in judicial language to describe it as a proceeding other than

one of review in reality federal habeas corpus is automatically the next appellate step of review of state criminal convictions on federal constitutional grounds. It is so considered and freely used by the state prisoners. (Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770). The petitioner was confined to Auburn State Prison in the Northern District of New York, when he filed his habeas corpus petition in this Court. I denied it in a reported decision without prejudice, ruling that in view of the unsettled state of the law in New York on the question of failure to object at the trial when photographs of the furniture involved in the theft were offered and received, he should reapply to the Appellate Division, Second Department; and Court of Appeals, New York, for reconsideration. (U. S. ex rel. Carafas v. Murphy, D.C., 231 F.Supp. 533, 1963; see also Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408). It is not clear in the record how it was managed, and probably is unimportant, but the petitioner did follow my suggestion and went back to the New York Courts, but apparently at the same time appealed to the Court of Appeals, Second Circuit. There was no further presentation to me by the petitioner after the State Appellate Court denials for reargument. The next ruling was by the Court of Appeals, Second Circuit, reversing my denial, qualified as one without prejudice to renewal and remanding the issues of unreasonable search and seizure to me for determination. (334 F.2d 331, 1964). New York obtained a stay of the mandate and a combined petition for certiorari was filed in this proceeding and in two others with similar questions and was denied. (381 U.S. 951, 1965, 85 S.Ct. 1798, 14 L.Ed.2d 725). The Court of Appeals, Second Circuit, in this case and in Angelet v. Fay, 333 F.2d 12; aff'd 381 U.S. 654, 85 S.Ct. 1750, 14 L.Ed.2d 623, commented that the failure to object in New York before the Mapp v. Ohio ruling (367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, June 19, 1961), would be futile and not a waiver. (See Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408; Nelson v. State of California, 9 Cir., 346 F.2d 73; Fay v. Noia, supra, 372 U.S. p. 439, 83 S.Ct. 822).

This marathon of state and federal review is not yet ended. The complication that caused confusion in this case, as in many others, was that the trial was held before Mapp, and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, settling the retroactivity of Mapp, did not come until June 1965. Fortunately, the long delay is not as serious as in some instances because the petitioner was paroled October 4, 1964 from confinement. Attorney McKeown, who had represented Carafas in the trial where the conviction here challenged was rendered, also at a suppression of evidence hearing before Nassau County Judge Kelly in 1962 on another Nassau County indictment charging similarly the burglary and larceny of model home furniture, and on the State appeals, volunteered to appear for him in the next steps in this proceeding to be taken upon the remand. The Court of Appeals left it to my discretion as to the need for hearing. However, Assistant Attorney General Mahoney, who handled the federal appeals for New York, and Attorney McKeown, thought a hearing should be held, and accordingly, one was held in Albany on November 5, 1965. The hearing was expedited by the attorneys who had the important witnesses Carafas, his wife and the two detectives, first reaffirm their testimony given at the State trial in 1960 and before Judge Kelly at the 1962 hearing relevant to the incidents that happened at the Carafas home in June 1959, and are important to be weighed in the determination of the search and seizure issue. Several of the witnesses at the hearing before me did testify to some further extent and exhibits were introduced to throw further light upon the physical factors present

where the arrest, search and seizure were made.

As a result of this splendid cooperation by the lawyers, and I am sincere about the effort, a substantial record was speedily submitted and must be canvassed for decision. The State trial record submitted is one of 1181 pages; the record of hearing before Judge Kelly in August, 1962, is 164 pages; the transcript of hearing before me in 1965 is 81 pages. Even to those with little habeas corpus experience on the front line a burdensome task of review should be evident. I shall refer, when necessary, as the attorneys have done in their excellent briefs, to the State trial record by "Tr.", to the minutes of the hearing before County Judge Kelly by "M.", and to the hearing before me by the symbol "T". The State records shall be filed with the Clerk of this Court, Federal Post Office Building, Utica, N. Y., with this decision.

With full realization of the seriousness of any criminal charges upon which conviction causes imprisonment, there is noted in the background of our situation here in the necessary search for probable cause one *Keystone Comedy* aspect. Nassau County Detectives Grim and Kapler investigated on the same morning the burglary of a model home in Oceanside, Long Island, that took place during the early morning hours of June 3, 1959. In their investigation they were taken through the model home and had described to them the pieces of furniture stolen. (T. 28, 44). They spoke to one particular neighbor in the case who gave the amazing information that she saw an AAA Truck come in the early morning hours when the burglary was taking place and pull out of the sand by the model home a black and gray Cadillac, with a U-Haul trailer attached, carrying New Hampshire license plate. (M. 84, T. 45). She described the appearance of the man and woman in the car. The detectives located the tow truck operator who pulled the car and trailer out, and they learned through him that the person who was assisted gave his name as James Carafas, 3553–30th Street, Astoria, apparently a duly accredited member of AAA. (M. 85–86, T. 45–46). This information led the detectives to the Astoria address on June 3, 1959, where they testified they saw the Cadillac and trailer with the New Hampshire plate parked in front of the two-story house. (M. 142, T. 26, 46; Resp. Ex. A).

 This is the critical juncture where the entry into the house and the search and seizure of the furniture must be examined. The legal guide lines for decision give no fixed formula to ascertain probable cause when, as here, arrest is made without an arrest warrant, and search without a search warrant. (United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653). It is emphasized that we must be mindful we deal with probabilities and must search for the practical considerations of everyday life on which reasonable and practical men, not legal technicians, act. (Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879). What constitutes "reasonableness" or "probable cause" must depend upon the specific facts of each case. (United States v. Elgisser, 2 Cir., 334 F.2d 103, 109). It should be noted that New York concedes the photographs of the furniture introduced at the trial would be subject to the same illegality taint as if the furniture had been offered as exhibits.

 My canvass of the record inclines me to the version of events, and there are always inconsistencies and differences, given by Detectives Kapler and Grim as to their entry into the building and the subsequent happenings that led to the arrest of Carafas, as they testified, on the second floor landing adjacent to the second floor apartment occupied by him and his wife. I find that the outside and inside doors leading to Dr. Shapiro's office on the first floor were unlocked. (T. 47). This finding is supported by the testimony of Doctor Shapiro before County Judge Kelly that the doctor had unlocked the doors himself on this particular day. The doctor further testified he was present in his office between the hours of 1–2 P.M., and heard the commo-

tion upstairs of arrest and search by the detectives. (M. 52–64). I accept as true the testimony of the detectives that the doctor's sign outside had the visiting hours for patients thereon and also that they inquired of a woman in the doctor's office as to the Carafas residence and were told "upstairs". I also accept as credible from the records and the testimony before me that one detective shouted "Carafas" from the bottom of the stairs, and Carafas came voluntarily to the landing to identify himself; that on the second floor landing at the top of the stairs as they looked up the steps and ascended the detectives could see a dresser corresponding to the description of the stolen furniture. (T. 41–42, 48). I also find that the detectives placed Mrs. Carafas under arrest in the open archway of the Carafas apartment. (M. 146–147; T. 49, 69–70). These findings, of course, reject the version of entry into and arrest inside the apartment given by petitioner and his wife. I find the search was made shortly after announcement of arrest, and that the furniture seized and removed was that taken from the model home at Oceanside, and the photographs introduced at the trial were only of that particular furniture. (M. 147–148, T. 49). There may be wonderment concerning the ruling of County Judge Kelly contrary to the one I reach. However, it is clear in my judgment from the opinion of the Judge that the basis for his ruling was that the furniture, involved in another indictment concerning a Bethpage, Long Island, burglary, was removed from a locked basement room the day after the petitioner's arrest.

■ Of course, as in all these situations, there are doubts when general principles of the governing case law are sought to be applied to particular facts. It is true the arrest and search might better have been made with arrest and search warrants. Also, no one disputes that the fairest way to enter a domicile is to ring the bell in the vestibule under that person's card. But under the circumstances here of landlord and tenant, Carafas being the landlord and the Doctor the tenant, in separate floors with common open doors for entry, as I find, and no breaking or force, such entry should not be characterized, in my opinion, unlawful under the cases as I read them. (Polk v. United States, 9 Cir., 314 F.2d 837; cert. den. 375 U.S. 844, 84 S.Ct. 96, 11 L.Ed.2d 72; Schnitzer v. United States, 8 Cir., 77 F.2d 233; Rouda v. United States, 2 Cir., 10 F.2d 916; Hobson v. United States, 8 Cir., 226 F.2d 890; United States v. Monticallos, 2 Cir., 349 F.2d 80).

■■ If the search did precede the arrest, and I do not so find, still I would think it must be considered nearly simultaneous and involving one transaction. (Holt v. Simpson, 7 Cir., 340 F.2d 853, 856; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Boston, 2 Cir., 330 F.2d 937, 939; United States v. Devenere, 2 Cir., 332 F.2d 160). There is no doubt in my mind after the unusual revelations of preliminary investigations probable cause much more than mere suspicion led the detectives to the Carafas' home. In no sense could I conclude the persons who had charge of the model home and described the furniture to the detectives, and the neighbor who gave the information of the car and trailer should be treated as informers. At the house the sighting of the dresser was enough to warrant belief that the petitioner was connected with the burglary. (Henry v. United States, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L.Ed.2d 134). The attorney for the petitioner earnestly argues, and it is worthy of serious consideration, that under the circumstances there was no emergency presented by reasonable fear of escape or removal of the furniture, and the detectives should have obtained the magistrate's search warrant. This procedure is and should be much preferred. (Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436; Miller v. United States, 357 U.S. 301, 307, 78 S.Ct. 1190, 2 L.Ed.2d 1332). The relevant test, however, is not whether it is reasonable to secure a search warrant but whether the search was reason-

able. (United States v. Rabinowitz, 339 U.S. 56, 64–65, 70 S.Ct. 430, 94 L.Ed. 653). It is my conclusion the arrest was lawful although without a warrant, as one made with probable cause in accord with New York statutes, and the search and seizure was incident to such lawful arrest and therefore not unreasonable. (Ker v. State of California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726; N.Y. Code Crim. Proc. § 177(3); People v. Adorno, 37 Misc.2d 36, 234 N.Y.S.2d 674).

My findings of fact and conclusions of law are stated above. As done in my decisions of the West and Wilson companion cases remanded, to anticipate, I hereby issue a certificate of probable cause (28 U.S.C.A. § 2253). A notice of appeal, if forwarded to the Clerk of this Court, Federal Building, Utica, N. Y., shall be filed by the Clerk without payment of prescribed fee. Application for leave to appeal generally in forma pauperis should be directed to the Court of Appeals, Second Circuit.

The petition, being entertained on the merits for the first time in this District Court, is denied and dismissed for the second time.

It is so ordered.