UNITED STATES of America,
Appellee,

v.

Gerard CACHOIAN, Appellant.

No. 446, Docket 29937.

United States Court of Appeals
Second Circuit.

Argued June 16, 1966.

Decided July 18, 1966.

Bernard P. Becker, New York City
(Anthony F. Marra, New York City, on
the brief), for appellant.

Robert G. Morvillo (Robert M. Mor-
genthau, U. S. Atty. for Southern Dist.
of New York, Andrew M. Lawler, Jr.,
New York City, on the brief), for appel-
lee.

Before HAYS, ANDERSON and
FEINBERG, Circuit Judges.

PER CURIAM.

Appellant was convicted below after a jury trial of violating the federal narcotics laws, 21 U.S.C. §§ 173, 174, and sentenced to fifteen years' imprisonment as a second offender. Finding no error below, we affirm.

■ Appellant first attacks the admission into evidence of narcotics, which he claims were illegally seized. Accepting the government agents' testimony as true, as we must, the record shows that two agents went to appellant's apartment while one went into the courtyard of the adjoining apartment house. The two agents heard voices in the apartment and knocked on the door, but nobody answered. After a second knock, appellant asked from inside the apartment who it was. Agent Holborow said "we're Federal Agents, I'd like to speak to you." There was silence, and Holborow knocked again. The peephole opened and appellant asked who was there and what they wanted. Holborow identified himself again and stated that he wished to speak to appellant. Appellant asked for identification and was shown Holborow's badge; appellant then said to wait a minute while his wife got dressed. The agents could hear a toilet flushing and a window being opened and closed. Again appellant returned and asked the agents who they were and what they wanted; the agents identified themselves and showed a badge. Appellant asked if they had a search warrant; he was told "no," and that the agents merely wanted to talk with him. In requesting entrance to the apartment, the agents used an "authoritative law enforcement" tone of voice. While the agents had been waiting to be admitted, Agent Krueger in the courtyard saw an individual dressed in white shirt and dark tie open the window and make a throwing gesture. Krueger felt something hit him and found in the immediate area four bundles of glassine envelopes containing what proved to be heroin. Apparently, after the heroin was thrown out of the window, the first two agents were admitted by appellant into the apartment. Once inside, they saw appellant, dressed like the man in the window, appellant's wife, and another man dressed in a dark shirt. Thereafter, Agent Krueger knocked and was also admitted into the apartment. Krueger showed appellant the envelopes and asked if they were his. Appellant at first denied ownership, but after Krueger told him what he had observed, appellant admitted that he had thrown them. Appellant was thereafter formally placed under arrest.

■ This version of what happened was contradicted by defense witnesses who claimed that the agents' entry was accompanied by yelling and threats of breaking the door down. However, the testimony of these witnesses was specifically rejected on credibility grounds by the trial judge, in denying the motion to suppress. Thus, the credited testimony shows a vigorous and repeated request by the agents for permission to enter to speak to appellant but an acknowledgment that they had no warrant, a hasty disposal of narcotics, and a voluntary admission of the agents thereafter. Appellant argues that the entry was illegal because consent to enter was not freely given, relying principally on Pekar v. United States, 315 F.2d 319 (5th Cir. 1963), and Hobson v. United States, 226 F.2d 890 (8th Cir. 1955). But in *Pekar*, where the defendant let two agents into his hotel room after they persisted for ten minutes, the evidence was thereafter taken from the room; defendant's interests were obviously against letting the agents in to inspect the premises. Here, appellant probably believed that he was in the clear, having thrown the contraband out the window. See United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963). *Hobson* is also distinguishable because the officers there broke into a house. Consent is principally a question of fact in each case, see United States v. Thompson, 356 F.2d 216, 220 (2d Cir. 1965), better resolved at the trial level. If the district judge believed the government's witnesses—as he did—then it was not error

to hold that consent was proven, even though it is not "lightly inferred," see United States v. Gorman, 355 F.2d 151, 158 (2d Cir. 1965); cf. United States v. Lewis, 227 F.Supp. 433 (S.D.N.Y. 1964). Since entry was not unlawful, it is not necessary to decide whether seizure of the narcotics was a product of the entry or of a request for admission alone.

 Appellant also attacks an instruction of the court that mentioned appellant's absence from the trial without the court's permission and referred to possible inferences therefrom. Appellant argues only that there was no evidence that his absence was voluntary, and that the court's charge improperly either stated or implied that fact. There is no claim even now that appellant's absence was not voluntary and, indeed, on the record, any such claim would be frivolous.[1] Under these circumstances, no reversible error was committed.

 Finally, appellant attacks the admission of certain post-arrest statements he made because he was not warned of his right to remain silent. Appellant relies upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). However, appellant's trial occurred prior to the decision in *Escobedo* and he cannot avail himself of the holding in that case. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Apart from *Escobedo*, the controlling decisions did not require exclusion of appellant's statements on the facts of this case. United States v. Cone, 354 F.2d 119 (2d Cir. 1965) (en banc), cert. denied, 384 U.S. 1023, 86 S.Ct. 1958, 16 L.Ed.2d 1026 (1966).

Judgment affirmed.[2]

---

1. After both sides rested but prior to final argument, appellant absented himself from the court without permission and a bench warrant issued. Thereafter, appellant was arrested but again became a fugitive. He eventually appeared before Judge Tyler in July 1965, when sentence was imposed over a year and three months after the jury had found him guilty.

---

2. By letter to the court appellant also argues that his conviction should be reversed because one of the agents has recently been arrested for extortion. This claim will not be considered by us because it has not been presented to the trial court and appellant, of course, can still do so by an appropriate procedure. Fed. R.Crim.P. 33.