Robert Tillman JONES, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–979A284.

Court of Appeals of Indiana,
Fourth District.

Sept. 25, 1980.

---

Raymond I. Klagiss and Charles E. Johnson, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Robert Tillman Jones appeals[1] his conviction in a jury–waived trial for possession of heroin, in violation of the 1935 Narcotics Act. He argues that the trial court erred in

---

1. This is a belated appeal pursuant to permission and order of this Court of September 17, 1979.

refusing at a pre–trial suppression hearing and again at trial to suppress evidence allegedly obtained in violation of his Fourth Amendment rights. As a corollary, appellant argues that if the evidence claimed to be illegally seized is suppressed, there is insufficient remaining evidence to sustain his conviction. Because we conclude that the evidence was properly admissible and, therefore, that sufficient evidence to support appellant's conviction exists, we affirm.

The facts most favorable to the judgment may be summarized as follows. On September 2, 1969, at approximately 9:45 A.M., Captain Jones of the Indianapolis Police Department, received a telephone tip from a named informer that Appellant Jones, a man named Robert Beeler, and a lady were in Room 45 at the Foster Motel with heroin in their presence. He summoned three officers to accompany him to the Foster Motel to investigate the tip. The officers procured no arrest or search warrant. Upon arrival at the motel, the plainclothed officers inquired of the desk clerk and discovered that appellant was a registered guest of Room 45. Captain Jones and another officer, Sergeant Bilbrey, stationed themselves in an observatory position behind the motel. The other two officers, accompanied by a motel maid with keys, went to the door of Room 45 and knocked. A woman pulled the drapes back, peered out and then released the drapes. While the officers at the door were waiting to be admitted, Captain Jones and Sergeant Bilbrey from their position behind the motel heard their fellow officers knock at the door. Within 10–15 seconds of the knocking, they observed a man they later identified as the appellant throw a tin–foil package later proved to contain heroin out the window. Meanwhile, after waiting approximately one minute after the drapes were dropped for the door to be opened, the officers at the front door knocked again. An estimated one minute

later, appellant opened the door. The officers identified themselves as police officers, appellant stepped back and indicated for the officers to enter. Upon entry, the officers found that the room was occupied by three people: appellant, a man named Robert Beeler, and a woman Carolyn Johnson.

The testimony of the officers as to what next ensued is conflicting. According to the testimony of both Captain Jones and Sergeant Bilbrey, 5–10 minutes elapsed before they returned to the front of the motel with the recovered packet and entered appellant's room. When they entered, they found appellant handcuffed and already under arrest. The arresting officer testified, however, that only *after* Captain Jones and Sergeant Bilbrey entered the motel room and indicated that they had seen appellant throw the package out the window was appellant handcuffed and placed under arrest. A preliminary field test had been performed which indicated the substance in the packet was heroin. Such testimony further indicates that the entry of Captain Jones and Sergeant Bilbrey followed closely in time to the entry by the officers at the front door and that no search of the premises or appellant occurred prior to Captain Jones' entry.

We are bound to accept the factual version of events most favorable to the trial court judgment, *Poindexter v. State*, (1978) Ind., 374 N.E.2d 509, 514 for, when the evidence supports conflicting inferences, we cannot substitute our judgment for that of the trial court nor can we judge the credibility of the witnesses. *Jones v. State*, (1978) Ind., 377 N.E.2d 1349, 1353. We accept as true, therefore, as the trier of fact necessarily did, the testimony of the arresting officer both that the arrest of appellant *followed* the communication by Captain Jones of the discovery of the packet and that no search of appellant or the motel room preceded his arrest.[2]

In challenging the legality of the seizure of heroin, appellant claims that because the

---

2. Appellant in his brief argues that an immediate search was made of the motel room. While

the testimony is uncontradicted that the officers seized an amber medicine bottle, belonging

police officers did not obtain any warrant, arrest or search, prior to their entry into the motel room, the entry by the officers was illegal. Because the packet was thrown from the window in response to the officers presence at the door, such presence threatening imminent and illegal entry, appellant alleges it is the tainted fruit of the subsequent illegal entry and search, and should, therefore, be suppressed. Critical to this argument is the assertion that the officers were without probable cause or other justification to enter the apartment.

The State refutes this assertion with the claim that probable cause for the arrest accompanied by exigent circumstances sufficient to justify the officers' failure to obtain a warrant existed based on the informant's tip. We delay, therefore, our analysis of the reasonableness of the officers' presence and actions at the motel to first determine whether probable cause coupled with exigent circumstances supplied by the informant's tip provided a sufficient and independent basis for the arrest of appellant and the seizure of the contraband.

■ It is axiomatic that warrants, both search and arrest, are required unless probable cause exists along with exigent circumstances rendering it impractical to seek a warrant. *Pawloski v. State*, (1978) Ind., 380 N.E.2d 1230. The threshold inquiry, before determining whether exigent circumstances existed, is whether the informant's tip supplied the requisite probable cause to support

a search or arrest of appellant. We examine, therefore, the information contained in the tip to determine whether the two prong test established in *Aguilar v. Texas*, (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States*, (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, is satisfied. Under *Aguilar–Spinelli*, when probable cause is based upon an informant's tip, the affiant must (1) set forth "the underlying circumstances necessary to enable a magistrate independently to judge the validity of the informant's conclusion," and (2) set forth evidence that the informant is "credible" or his information is "reliable." *Spinelli*, 393 U.S. at 413, 89 S.Ct. at 587. The tip here falls short of the requirements set forth in *Aguilar–Spinelli* and is not saved by sufficient independently corroborating facts. *United States v. Harris*, (1971) 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. While there was evidence that the informant had proved reliable in the past, his information having successfully led to several vehicle theft convictions some undisclosed number of years earlier, there was no evidence presented from which a magistrate could conclude that a factual basis for the information furnished existed.[3] *Madden v. State*, (1975) 261 Ind. 223, 328 N.E.2d 727; *Potter v. State*, (1979) Ind.App., 385 N.E.2d 955. The record is similarly devoid of any corroborating information of underlying circumstances[4] independent of the tip that would indicate that the information was trustworthy.[5] *State v.*

---

to the woman in the room, this action, not here in issue, may be supported under the plain view doctrine. That is the only evidence of a search conducted before the entry of the officers from the rear.

3. The record reveals the following testimony:
 Q. Now, tell me, Captain, what did he say to you and what did you say to him, to the best of your ability [to] recall?
 A. He advised me that Robert Jones and Robert Beeler, and a lady, were in Room 45 at the Foster Motel, and that they had heroin in their possession.
 Q. Was that the entire extent of the conversation?
 A. Yes. It was very brief.

4. The record reveals the following testimony:
 Q. Now, other than the information which you received from Ronald Boyce, did you have any other information, independent of that, pertaining to the defendant on September the 2nd, 1969?
 A. No, sir.
 R. 797.

5. The record indicates that the informant here was a professional informant. In *Powloski v. State*, (1978) Ind., 380 N.E.2d 1230, the Supreme Court of Indiana discussed professional informants and the test for determining their reliability:

*Mooney*, (1979) Ind.App., 398 N.E.2d 698, 700.

 It necessarily follows that, as the officers were without probable cause to obtain a warrant, the presence or absence of exigent circumstances is without legal significance. A search *without* probable cause is never justified by the need to prevent the disappearance or destruction of evidence of a crime. *Cf. United States v. Scott*, (9th Cir. 1975) 520 F.2d 697 (while exigencies of "hot pursuit" may sometimes excuse the lack of a warrant, it cannot excuse the lack of probable cause). However, even were probable cause to be found, the fact that narcotics were involved does not, standing alone, amount to exigent circumstances justifying a warrantless search or arrest. For even when authorities have probable cause to conduct a search, only in a few specially established and well–delineated situations will warrantless searches withstand constitutional scrutiny.[6] *Schneckloth v. Bustamonte*, (1973) 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, *Pawloski v. State*, (1978) Ind., 380 N.E.2d 1230, 1233.

 Despite the absence of a warrant supported by probable cause to arrest appellant or search his motel room, the evidence obtained will not be suppressed if the actions of the police officers in going to the motel were reasonable and if their actions in entering appellant's motel room did not amount to an illegal search. For if the police were, at all times, lawfully present where the property was seized, there is no constitutional violation in seizing what is abandoned property.[7] *United States v. Maryland*, (5th Cir. 1973) 479 F.2d 566.

The linch pin for appellant's position is the assertion that the entry of the police officers, without a warrant supported by probable cause, into appellant's motel room constituted an illegal entry and search in violation of appellant's Fourth Amendment rights. Arguing that the throwing of the package and the entry by the police into the motel room is one transaction which cannot legitimately be separated, appellant submits that but for the threatened illegal entry and search, the abandonment would not have occurred. As fruits of the threatened illegal search, appellant argues, the evidence must be suppressed.

Appellant places his chief reliance upon *Hobson v. United States*, (8th Cir. 1955) 226 F.2d 890, where the court suppressed property thrown from a window after officers had, without probable cause, sought to gain admission to defendant's home. The property was thrown either immediately before or just after the officers' forcible break–in. Appellant also relies upon two Indiana cases, *Bowles v. State*, (1971) 256 Ind. 27, 267 N.E.2d 56, and *State v. Smithers*, (1971) 256 Ind. 512, 269 N.E.2d 874. In *Bowles*, the Indiana Supreme Court reversed the

---

There are two major types of informants and the test for determining the reliability of each is somewhat different:

1. Professional informants and anonymous tipsters; Generally, reliability of this category must be established by reference to underlying facts and circumstances which indicate that the information is trustworthy. Corroboration is necessitated because information of this type may be unreliable or self–serving, especially when given in return for favors such as money or leniency in possible criminal prosecution.
*Id.*, at 1232.

6. The state, in its brief, argues that the fact that narcotics, easily disposed of, were involved created exigent circumstances sufficient to excuse the state's failure to obtain a warrant. We reject such a wide sweeping assertion, an assertion which creates an exception large enough to swallow the warrant rule. Absent evidence that the contraband was in the process of destruction or was threatened with immediate destruction, the mere fact that narcotics were involved did not create exigent circumstances. *Vale v. Louisiana*, (1970) 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409.

7. Applying the reasonable expectation of privacy test to appellant's actions in throwing the contraband out the motel window into the alley below, we conclude that by such conduct he lost all reasonable expectation of privacy in the articles. *United States v. Wilson*, (9th Cir. 1973) 472 F.2d 901.

trial court's admission of evidence thrown by a defendant about to be frisked by police who had stopped defendant without justification. Lacking justification, the officers' threatened search was found illegal. Because the threat of illegal activity led to the relinquishment of possession, the discovered evidence was suppressed. Similarly, in *Smithers*, the Supreme Court upheld the suppression of evidence discarded after defendant's vehicle was stopped without justification. The court held that where police action triggers the abandonment, the action must be lawful or the evidence will be considered obtained in an illegal search. The court affirmed the trial court finding that there was no lawful detention in *the first instance* and suppressed the fruits.

■ These cases are distinguishable from the case at hand in two important respects. First, unlike the police action in *Bowles* and *Smithers*, the presence of the officers at the motel, the *initial intrusion of the police*, was justified as legitimate investigation of the reasonable suspicion created by the informant's tip that a crime was being committed. *Burhannon v. State*, (1977) Ind.App., 361 N.E.2d 928. To justify an investigative detention, the police must be able to point to specific and articulable facts which, taken together with the rational inferences drawn from those facts, reasonably warrant the intrusion. *Terry v. Ohio*, (1968) 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889. Effective crime prevention requires recognition that police officers may, in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possible criminal behavior even though no probable cause for arrest exists. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880.[8] Thus, the officers, reasonably suspicious that criminal activity was occurring, had the lawful right to approach appellant's motel room. Whatever intent or purpose may have been in

their minds, no improper or unlawful act of any kind was committed by any of the officers before the abandonment of the heroin. *Cf. Cutchlow v. United States*, (9th Cir. 1962) 301 F.2d 295 (evidence thrown from house as officers approached with a valid warrant for arrest of third party was properly admitted against defendant).

Having concluded that, unlike *Bowles* and *Smithers*, no illegal police action preceded the abandonment of contraband which would taint its recovery, we examine the legality of the officers subsequent entry into appellant's motel room. Unless some illegal activity later occurred which would taint the recovery of the contraband, such as a forcible or unconsented to entry and search, the contraband, legally obtained, was properly admitted into evidence.

To be placed in relief is the second major distinction between the facts at hand and appellant's cited authority. In *Hobson*, the officers *broke into* the house either immediately before or after the abandonment. Considering the total atmosphere, the Eighth Circuit properly refused to separate the throwing of the package from the illegal search. *Hobson*, 226 F.2d at 894. *Fletcher v. Wainwright*, (5th Cir. 1968) 399 F.2d 62, 64. These cases demonstrate that even where the discarding act precedes the entry into the room, as it here did, if the subsequent entry is illegal, the objects earlier thrown will be suppressed. To the contrary, however, are the facts of the present appeal. The testimony most favorable to the judgment indicates that after the officers knocked twice, in between which time a woman peered out at the officers and appellant threw contraband out the window, appellant opened the door. The officers identified themselves, appellant stepped back and indicated, for the officers to come in, and the officers entered. Faced, as here, with a consent to enter or search issue, we study the conduct of appel-

---

8. We cannot say that the stationing of officers at the rear of the motel is outside the scope of legitimate police investigative techniques.

lant to determine whether his actions are sufficient to manifest consent. *United States v. Griffin*, (7th Cir. 1976) 530 F.2d 739, 743. Once the existence of consent is ascertained we will determine the voluntariness of such implied consent.

■ The evidence is sufficient to support a finding that appellant, by his actions which can reasonably be construed as an invitation to enter, as adequately consented to entry as he would have by a verbal invitation. *Robbins v. MacKenzie*, (5th Cir. 1966) 364 F.2d 45, 48. In *Robbins*, the police had identified themselves and stated their purpose before the door was opened. The Fifth Circuit distinguished cases where the householder opens a door not knowing who is there and finds himself unexpectedly faced with authorities because the act of opening the door may merely be to see who is there, and turning back may only be retreating. We feel, however, that despite the officers' failure here to identify themselves until the door was opened, the woman's peering out the window and appellant's act of throwing the contraband out the window before the door was opened reasonably indicate that the identity of the officers was suspected by appellant before he opened the door. Thus, the inference from appellant's gesture of invitation that consent to entry was given remains.[9]

■ While voluntary consent to a search will not lightly be inferred, the question whether consent was voluntary or coerced is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, (1973) 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59. Because the voluntariness of consent is a question of fact better left to the trial court who must pass upon the credibility of the witnesses, a finding of consent will not lightly be overturned. *Muegel v. State*, (1971) 257 Ind. 146, 272 N.E.2d 617. Viewing the totality of the circumstances, there is no showing that the consent given was other than appellant's "essentially free and unconstrained choice." Similarly no indication is given that his "will has been overborne and his capacity for self–determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. at 225, 93 S.Ct. at 2046; no evidence is presented that the consent was coerced by threats, force, or granted only in submission to a claim of lawful authority. *Id.*, at 233, 93 S.Ct. at 2050. There is no indication that appellant was a newcomer to the law, mentally deficient, or unable in the face of officers' presence and knock at the door to exercise a free choice. *United States v. Watson*, (1976) 423 U.S. 411, 424–25, 96 S.Ct. 820, 828, 46 L.Ed.2d 598. Indeed, it is likely that appellant, having thrown the contraband out the window, probably believed that he was in the clear. *United States v. Cachoian*, (2d Cir. 1966) 364 F.2d 291, 292.[10]

Because we find no illegal police activity that would taint the recovery of the narcot-

---

**9.** Although it is reasonable to construe the actions of appellant as consent to *entry*, we are unable to infer consent to search. The officers, unlike the situation in *Robbins*, failed to state the purpose of their visit before or, indeed, even after the door was opened. Therefore, it is not reasonable to infer that appellant, ignorant of the purpose for the police visit, consented to a search. Because no search by the officers occurred, however, there is no need to reach the issue of the scope of appellant's consent.

**10.** *Compare United States v. Cachoian* with *Massachusetts v. Painten*, (1st Cir. 1966) 368 F.2d 142. While both cases are substantially identical to the case at hand, the courts reached opposite results. The court in *Painten* placed weight upon the district court finding as fact that the police purpose in going to the defendant's home was to arrest him although no warrant or ground for obtaining a warrant existed. In *Cachoian*, the court found the purpose of the officers to be investigatory only.

Here, Captain Jones testified that the police purpose was to *investigate* the tip. In admitting the evidence derived from the search, the trial court impliedly found that the agents purpose in going to the motel was in fact what the testimony showed it to be. We cannot say this finding is clearly erroneous.

We do not, as appellant urges, place significant weight upon the failure of the officers to obtain a warrant. Lacking probable cause, their course of conduct–legitimate police inquiry–was proper. *Schneckloth v. Bustamonte*, (1973) 412 U.S. 218, 227–228, 93 S.Ct.

ics thrown by appellant from his motel window, we conclude that the evidence was properly admitted and, therefore, that sufficient evidence to support appellant's conviction exists.

Affirmed.

BUCHANAN, C. J., and CHIPMAN, J., concur.

2041, 2047–48. Neither do we find significant the fact that a maid with keys accompanied the officers to the motel room. Inferring an improper purpose from such fact alone, is mere speculation. We, therefore, find the reasoning of *Cachoian* and its finding of consent to entry more persuasive.