BEALE *v.* STATE

[No. 56, September Term, 1962.]

*Decided December 10, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*George L. Russell, Jr.,* for appellant.

*Harrison M. Robertson, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Saul A. Harris, State's Attorney,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The defendant (Rosalie L. Beale) was tried by the Criminal Court of Baltimore sitting without a jury on a six-count indictment, charging violations of the narcotic drug laws, and a general verdict of guilty was entered on all counts. On the motion for a new trial, the Supreme Bench granted the motion as to the first, second, fourth and fifth counts (charging unlawful possession and control of narcotics and with being a second offender with respect to both of these charges), but denied the motion as to the third and sixth counts (charging unlawful possession of equipment for administering narcotics and with being a second offender with respect to this charge).

On appeal, the only claim of the defendant is that the narcotics equipment taken by the police from the back yard of the house in which she resided was inadmissible as evidence against her because it was obtained as a result of an illegal search and seizure. The State, on the other hand, contends that there was no search and seizure as a matter of law; that the taking of the evidence was reasonable and therefore legal

though made without a warrant; and that the taking was legal as incident to a lawful arrest.

In the early morning (3:00 a.m.) of a day in May of 1961, three members of the narcotics squad (Officers Robinson, Davis and Griffin) went to the residence of the defendant. They planned, the police claimed, to talk to the defendant with regard to an arrest that had been previously made. When they arrived, Officer Robinson went up the front steps and rang the bell to the second floor apartment occupied by the defendant and demanded that he be admitted. And, as had been prearranged, Officer Davis went to the rear of the premises. When the defendant looked out of a second story window and recognized Officer Robinson, whom she knew, she refused to admit him and left the window. But she went out on the roof of a back porch and threw several objects (subsequently identified as narcotics equipment) to the ground. Officer Davis, who was standing in the hedge-enclosed backyard of the premises, picked up one of the objects, examined it, and, after determining that it was a hypodermic needle, yelled that he had a needle to Officer Robinson, who was still standing at the front door. It was not until then and after a further demand to enter was refused, according to Officer Robinson, that he kicked the door open, and went up to the apartment of the defendant where he found her with a marijuana cigarette. Officer Davis followed, bringing with him the narcotics equipment he had taken from the back yard. A search was then made of the apartment and the defendant was arrested.

At the trial the narcotics equipment taken by the police was admitted as evidence over the objection of the defendant.

If there was a search and seizure as a matter of law, and the seizure of the narcotics equipment by the police was unlawful under the facts and circumstances in this case, then the remaining questions posed by the State as to whether the taking of the equipment was reasonable or was incident to a lawful arrest will require little consideration.

As we read the record, it is apparent to us that the police were trespassers at the time the narcotics equipment was picked up in the back yard. Officer Davis became a trespasser

the moment he entered the enclosed back yard. And Officer Robinson was a trespasser, if not *ab initio,* then certainly from the time of his forced entry into the dwelling because the information given him by Officer Davis that a misdemeanor had been or was being committed in his presence was acquired while Officer Davis was himself a trespasser.

In *Gorman v. State,* 161 Md. 700, 158 Atl. 903 (1932), where the facts and circumstances were similar to those in the case at bar, a police officer, having seen a number of persons entering and leaving the house of the defendant, suspected a violation of the lottery laws and entered the house through an open door, without either a warrant to search the premises or to arrest the defendant, and took possession of the gambling paraphernalia he found there. In holding that such evidence was procured by an illegal search and seizure, even though the officer had not found it necessary to break open the door, it was said (at p. 704) that "the bursting open of the door was not the essence of the offense; it was the invasion of the privacy of the defendant's home, [for] under the facts and circumstances stated, the officer was * * * a trespasser in entering the house of the defendant." See also *McDonald v. United States,* 335 U. S. 451 (1948), where it was held that evidence obtained by trespassing officers should have been excluded. Compare *Harris v. State,* 203 Md. 165, 99 A. 2d 725 (1953), holding that it was not illegal for a police officer to walk through a covered passageway used by others, besides the tenants of the apartments on both sides of the way, and observe a suspect standing in her doorway looking through a bundle of lottery tickets.

The case of *Mattingly v. Commonwealth,* 247 S. W. 938 (Ky. 1923), though not directly in point, is likewise authority for the proposition that officers wrongfully on the premises of a suspect may not lawfully search his premises and seize such illegal possessions as they may find there. In that case, where officers, who were in an enclosure near a house with a warrant that was ineffective because it was based on insufficient affidavits, looked through a window and obtained certain information before forcibly entering the house, the Court of Appeals

of Kentucky held that the information thus received, as well as that obtained after entering the house, was inadmissible in evidence.

In yet another case nearer in point, *Hobson v. United States,* 226 F. 2d 890 (C.A. 8 1955), where the facts and circumstances [1] were strikingly similar to those in the case presently before us, the Court, in holding the evidence to be inadmissible, said:

> "The Government places its chief reliance upon its contention that the heroin was obtained by voluntary disclosure of the defendant and not as the result of search and seizure. The evidence discloses that while the officers were seeking to gain admission and either immediately before or just after the break-in the defendant threw the heroin out of the window into the enclosed back yard." [p. 893.]
>
> * * * * *
>
> "The enclosed back yard in which the thrown package landed was part of the curtilage of the defendant's home and was subject to the same protection as the home itself." [p. 894.]
>
> * * * * *
>
> "Considering the total atmosphere of the case * * * we cannot separate the throwing of the package from the unlawful search. The defendant's action in throwing the package was not voluntary but was forced by the actions of the officers. That the officers anticipated such a result is evidenced by the fact that they stationed a man in the back yard to receive any person or evidence that might come out. The throwing of the package was directly caused by the actions of the

---

1. In *Hobson v. United States,* 226 F. 2d 890, as in the instant case, two officers went to the front door of a dwelling and knocked while another officer went to the back of the house and took a position inside a fence enclosing the back yard; and, as in the present case, the officer at the front door forced his way into the house and searched it after the officer in the back had informed him that the occupant had thrown the "stuff" into the back yard.

officers. Further, even after the package was thrown out it remained upon protected premises. Without its seizure and examination it afforded no incriminating evidence." [p. 894.]

In this case, as in *Hobson,* the back yard was a part of the curtilage surrounding the dwelling. Here, as there, the action of the defendant in disposing of the prohibited materials was not voluntary but was forced by the actions of the officers. And here, as there, but for the seizure and examination of the jettisoned materials there would have been no incriminating evidence. See also *Kroska v. United States,* 51 F. 2d 330 (C.C.A. 8 1931).

For the reasons stated, we think the seizure of the narcotics equipment by the police was clearly illegal, and that its admission as evidence against the defendant was error.

The remaining contentions advanced by the State require only cursory consideration. Here, where the seizure of the narcotics equipment was made before the arrest of the defendant, the seizure was certainly not incident to the arrest. And, inasmuch as at least one of the police officers was an intruder when the equipment was picked up in the back yard without a search warrant, it is evident that the unauthorized seizure was unreasonable. See *Stanley v. State,* 230 Md. 188, 186 A. 2d 478, decided contemporaneously herewith. And see *Cohen v. Norris,* 300 F. 2d 24 (C.A. 9 1962), cited in the *Stanley* case.

The case will be remanded for a new trial.

> *Judgment reversed and case remanded for a new trial; the mayor and city council of Baltimore to pay the costs.*