93 N.J. Super. 140 (1966)
225 A.2d 157
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHARLES ORR AND ERNIE WILLIAMS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1966.
Decided December 15, 1966.
*142 Before Judges CONFORD, FOLEY and LEONARD.
Mr. George A. Franconero, Assistant County Prosecutor, argued the cause for appellant (Mr. Brendan T. Byrne, County Prosecutor of Essex County).
Mr. George R. Sommer argued the cause for respondent Charles Orr.
Mr. Francis F. Welsh, assigned counsel, argued the cause for respondent Ernie Williams.
The opinion of the court was delivered by LEONARD, J.A.D.
The State by leave of court appeals from an order of the County Court ordering that a "Motion to Suppress Evidence be * * * granted." The evidence consisted of a quantity of heroin and associated narcotics paraphernalia intended to be used by the State in the trial of defendants upon a joint indictment for possession of a narcotic drug. R.S. 24:18-4.
At the hearing on defendants' motion, only two witnesses testified. They were Hugh F. McNulty, Jr. and David McCummings, both members of the Newark Police Department narcotic squad. Their testimony established the following facts.
On January 27, 1966, at 10 A.M., while these officers were investigating a possible narcotics violation in the building at 22-24 West Kenney Street, Newark, they saw defendant Charles Orr at the doorway of apartment D-9 located on the fourth floor of these premises. During the course of a conversation then had with McNulty, Orr stated that "he had been living in the apartment" and that "he was going down to change his address right then."
Thereupon the detectives returned to police headquarters and checked their narcotics files, from which they ascertained that Orr had not changed his address from his last-known residence, 581 Hunterdon Street, Newark. Knowing Orr to *143 have been involved with narcotics and to be a person required to register a change of address within 24 hours under N.J.S. 2A:169A-6, they returned to his apartment at or about 12:40 P.M., specifically "to affect the arrest of Orr for failure to change address" (sic). However, the officers did not secure an arrest warrant for Orr, even though their office was in the same building as the municipal court which was in session at the time. They had no warrant for the arrest of Williams, whose presence was unanticipated, nor did they have any search warrant for the apartment.
On this second visit McNulty proceeded to Orr's apartment and McCummings remained downstairs in the vicinity of an alley which was overlooked by the windows of that apartment. This was done as a part of a preconceived "plan" on the part of the officers so that McCummings could "ascertain if anything was thrown out of the window."
McNulty waited a couple of minutes and then knocked on the apartment door and announced "Its McNulty. Open the door." Orr knew who McNulty was. Thereupon, "[T]here was a lot of commotion and running around and then the door was opened."
Upon entering the apartment McNulty found only Orr and Williams therein and he "made" them sit upon a bed. In open view upon a table the officer saw an eye dropper and a bottle cap, and on the floor was a plastic bag containing two hypodermic needles and other paraphernalia. McNulty further observed that a window overlooking the alley was open. However, when he entered the apartment neither defendant was near this window and he did not see either of them throw anything out of it. At or about this time McCummings came into the apartment and related what he had observed (hereinafter discussed), left and returned in a few moments with a package.
McNulty had been in the building "a couple of minutes" when McCummings, who, as above noted, was stationed by the alley below, observed a white object "thrown" from the window of Orr's apartment and which landed in the alley. The *144 officer did not retrieve the package at that time because the entrance gate to the alley was locked, but he quickly went to Orr's apartment and informed McNulty of his observation. He then returned downstairs, entered the alley from the apartment building, and secured the "package," which was a white napkin containing glassine envelopes in which was contained the heroin herein involved. McCummings then returned to the apartment with this evidence and at that time he observed the open window from which the napkin had been thrown.
The officers then took both defendants to headquarters and booked them for unlawful possession of hypodermic needles (a disorderly person offense) and for the crime of possession of narcotics. Orr was also charged with failing to register a change of address as a narcotics offender.
After hearing, the trial court granted defendants' motion to suppress upon the ground that "the arrest of defendant Orr was illegal, and all evidence flowing from their illegal arrest is the fruit of the poisonous tree." The only evidence referred to by the court in its opinion was the "glassine envelopes containing heroin." While the motion made by defendants is not reproduced in the appendix, counsel for both sides at oral argument agreed that the motion comprehended suppression not only of the heroin but also the paraphernalia found by the officers in Orr's apartment. For that reason, and in order to avoid delay, we shall consider on this appeal the admissibility of both the heroin and the paraphernalia.
The order of the trial court was based upon the theory that the arrest of Orr, being for a mere disorderly persons offense, was illegal because the offense was not committed in the presence of the officers and no arrest warrant had issued. The State first contends that the arrest of Orr although without a warrant, was nevertheless legal and valid, and therefore any search and seizure made incidental thereto was valid. It argues that Orr was guilty of a violation of N.J.S. 2A:169A-6, in that he failed timely to register a change of *145 address, and that even though this be a mere disorderly persons offense they could arrest him without a warrant by virtue of the provisions of N.J.S. 2A:169-3 because it was committed in the presence of the officers. The point is without merit.
N.J.S. 2A:169A-6 provides as follows:
"In event that any such person so registered shall change his place of address either within or without the State, he shall, within twenty-four hours thereafter, notify the chief of police of the municipality or the office of the State Police with which he is registered of his change of residence by description and street number, if any, in such manner as to identify the same. * * *"
Assuming that the information in the officers' possession justified the belief that Orr had been living in his new abode for over 24 hours and therefore was guilty of a violation of the statute, we disagree with the State's contention that the offense was committed in the officers' presence. That notion is founded upon the subordinate premise that this was a continuing offense. We do not agree. The offense proscribed in the statute is not the changing of address or the day-to-day living at the new address. Rather, the offense is the failure to notify the police within 24 hours after moving. N.J.S. 2A:169A-7. This offense would be consummated forthwith upon, and at the moment of, the expiration of the time limit set forth in the statute. The record fails to disclose when this occurred. Therefore the offense cannot be said to have occurred in the "presence" of officers McNulty or McCummings. Thus, N.J.S. 2A:169-3 would not authorize either of them to arrest Orr on the stated charge without a warrant. For these reasons we agree with the trial court that his arrest for the violation of N.J.S. 2A:169A-6 without such a warrant was invalid and illegal.
The rule is firmly established that evidence secured as a result of a search and seizure incidental to an unlawful arrest, and without a search warrant, will be suppressed and is not admissible in a subsequent trial of the person arrested. *146 Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Cf., State v. Smith, 37 N.J. 481, 492 (1962), certiorari denied 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963); State v. Doyle, 42 N.J. 334, 342 (1964).
The State does not dispute this doctrine but asserts that defendants' arrest was valid since it was based upon probable cause, and therefore the officers "may legally embark upon an incidental search of defendant's person and premises." This position rests upon the contention that after the napkin was thrown McCummings or anyone else had a right to pick it up and examine the contents. Therefore, argues the State, it could reasonably be inferred that the officer had probable cause to believe that defendants had the narcotics in their possession, since they were the occupants of the apartment from which the napkin was ejected. This probable cause, postulates the State, arose independently from the acts of McNulty. This last thesis is essential to the State's position, since it is undeniable that if the State's acquisition of the package with the heroin was the causal product of the arrest transaction, the package and its contents were subject to suppression. See infra.
While the record does not disclose the precise moment when the formal arrest took place, it clearly establishes that the arrest was made by McNulty, not by McCummings, and that it was made before the latter initially entered the apartment and advised the former that an object had been thrown, and certainly before he returned to the apartment with the glassine envelopes. McNulty testified that he arrested defendants "after I had entered the apartment." He further testified that when he entered he "made Orr and Williams sit on a bed" and that McCummings did not come into the apartment for the first time until "a minute or two" after he did, and that McCummings "saw that everything was under control." This restraint of the persons of defendants and the restriction of their liberty of movement by McNulty almost immediately *147 upon entering into the apartment constituted an arrest. Doyle, supra, 42 N.J., at p. 342. The arrest having been made before McNulty knew of the existence of the glassine envelopes, the finding of the latter could not have been the true cause for his arrest of defendants. Moreover, the record indicates that the sole reason for Orr's arrest as well as for the second trip to the apartment, the knock on the door and the demand for admission, was the alleged violation of N.J.S. 2A:169A-6. Thus we conclude that both the arrest and the intent to arrest preceded the search of the apartment and the finding of the narcotics. The search and its product having been the result of an illegal arrest, the separate arrest, if deemed such, for the narcotics offense cannot be justified by the incriminating product of the tainted search. Cf., Doyle, supra, 42 N.J., at p. 342.
Even were it conceded that McCumming's finding of the narcotics preceded, technically, the formal arrest of Orr and Williams, the same result must follow. The evidence supports a strong inference that the napkin was thrown out of the window after the knock on the door by McNulty and as a result thereof and of Orr's knowledge of McNulty's identity. The State conceded this at oral argument.
In State v. DeGrazio, 39 N.J. 268 (1963), the court affirmed the granting of a motion to quash a search warrant ant suppress resultant evidence. When police officers went to defendant's apartment with a defective search warrant for betting material, they stationed a policewoman outside the premises. She retrieved a paper bag which she saw thrown from defendant's window, which contained betting slips. The court held: "There is no question that under the precedents the contents of the bag were the fruit or product of the unconstitutional search and as such were inadmissible in evidence." (at pp. 269-270)
The fact that in DeGrazio the bag was thrown "at the time" of the illegal search and that in the present case the object was thrown before McNulty entered the apartment does not alter the applicability of the rule enunciated in DeGrazio. *148 The court in that case said that the constitutional design of Mapp [Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] undoubtedly dictates the exclusion of tangible materials obtained, as here, during or as a direct result of an unlawful infringement of the sanctity of the home" (at p. 271; emphasis added). Here, as above noted, it is conceded the napkin was thrown as a direct result of the knock on the door. McNulty came to defendant's apartment with the specific intent to arrest Orr for the alleged statutory offense, and for no other purpose. He knocked on the door of defendant's apartment in order to gain admission thereto for the purpose of making that arrest. That knock was an integral step in the attempted execution of the illegal arrest. Cf., Work v. United States, 100 U.S. App. D.C. 237, 243 F.2d 660 (D.C. Cir. 1957).
The court in DeGrazio cited a number of authorities in support of its conclusion (39 N.J., at p. 270). Among them were Hobson v. United States, 226 F.2d 890 (8 Cir. 1955), and Beale v. State, 230 Md. 182, 186 A.2d 213 (Ct. App. 1962).
In Hobson the defendant, as here, threw a package of heroin out of the window after the police had knocked, but before they gained admission to defendant's residence. The court found that the throwing was the direct result of the unlawful intrusion (illegal search) and that the contents of the package could not be received in evidence. The Government there argued that the heroin was obtained by voluntary disclosure of defendant and not as a result of search and seizure. The court in rejecting this argument said:
"Considering the total atmosphere of the case * * *, we can not separate the throwing of the package from the unlawful search. The defendant's action in throwing the package was not voluntary but was forced by the actions of the officers. That the officers anticipated such a result is evidenced by the fact that they stationed a man in the back yard to receive any person or evidence that might come out. The throwing of the package was directly caused by the actions of the officers. * * *" (226 F.2d, at p. 894)
*149 Likewise, in Beale the same result was reached, even though defendant threw the incriminating evidence out a window after the officer who illegally sought to arrest him rang defendant's bell, but before he gained admittance.
Finally, we find no support for the State's position from the fact that Orr opened the dor to his apartment and allowed McNulty to enter after the latter knocked and identified himself. Orr knew McNulty and knew he was a police officer. The entry was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948). See State v. King, 44 N.J. 346, 352-356 (1965), State v. Parsons, 83 N.J. Super. 430, 443 (App. Div. 1964). The State has not argued to the contrary, either below or here.
Based on all of the above, we conclude that the search and seizure of both the heroin and the paraphernalia found in the apartment were incidental to an unlawful arrest and the product thereof. Therefore, all of this evidence must be suppressed and excluded from admission at trial.
The State does not contest defendant Williams' standing to challenge the legality of the evidence. He was a guest in Orr's apartment and was indicted for possession of the heroin so seized. The State proposed to use this evidence against him. State v. Parsons, supra, 83 N.J. Super., at p. 443, Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
Judgment affirmed.