98 N.J. Super. 506 (1968)
237 A.2d 890
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSE CRUZ REYES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1967.
Decided January 10, 1968.
*507 Before Judges CONFORD, COLLESTER and LABRECQUE.
*508 Mr. Solomon Golat, assigned attorney, for appellant.
Mr. James R. Zazzali, Assistant County Prosecutor, for respondent (Mr. Brendan T. Byrne, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Jose Cruz Reyes and Susan Di Costanzi were indicted for the crime of unlawful possession of narcotic drugs in violation of N.J.S.A. 24:18-4. A pretrial motion by defendant to suppress heroin seized by the police as evidence was denied. Thereafter following a trial by the court, sitting without a jury, Reyes was convicted and Susan Di Costanzi was acquitted.
Reyes appeals, alleging: (1) error in denial of the motion to suppress evidence; (2) error in denial of a motion for judgment of acquittal at the close of the case, and (3) the State failed to prove that defendant had possession of the narcotic drugs.
We deal first with the denial of defendant's motion to suppress evidence. The essential facts testified to by the State's witnesses at the hearing can be summarized as follows. Newark detectives, assigned to the Narcotics Squad, received information from a reliable informant that defendant was unlawfully selling narcotics from a first-floor apartment at 26 Garside Street, which defendant shared with Susan Di Costanzi, the mother of their illegitimate child. They knew that defendant was a narcotics user and had been previously convicted of unlawful possession of narcotics. Following receipt of the information the detectives conducted a surveillance of the apartment from the second-floor hallway of a building located across the street. On July 21 and 26, 1965 the detectives, using binoculars, observed known narcotic users walk up to the front window of the apartment, hand money to Reyes and receive in return a small package. One officer, Detective Gockeler, described the packages as *509 glassine envelopes (commonly used as containers of heroin in the illicit drug traffic).
Based on an affidavit setting forth the informant's information and the officers' observations, a search warrant was issued on July 27. On August 4, armed with the warrant, the detectives took up surveillance of the apartment from a nearby parking lot. The informer was sent to the apartment and returned to report that there was heroin on the premises. At about 1:55 P.M. defendant left the apartment. The detectives stopped him on the street and arrested him as a disorderly person on a charge that he had failed to notify the police chief within 24 hours of his change of address from that shown on his narcotics registration card. N.J.S. 2A:169A-6. They informed him they had a search warrant to search the apartment and exhibited a copy thereof. They took him to the apartment which defendant opened for them with his key. A search of the kitchen disclosed two packages containing 17 glassine envelopes of heroin. The officers then told defendant he was under arrest for unlawful possession of narcotics. Before leaving the apartment for police headquarters defendant was permitted to put on a clean shirt and underwear which he took from a dresser drawer.
Defendant denied selling narcotics as charged by the police. He said he lived with his sister at 213 Lake Street and only went to 26 Garside Street occasionally to visit his child. He testified that on the morning of August 4 Miss DiCostanzi had given him a key so that he could open the door for a plumber. He said that after leaving a barber shop, one block from the apartment, he was stopped by the police and forced to enter their automobile. He was not told that he was under arrest. He was compelled to empty his pockets and the detectives took a key chain containing four keys, one of which was the key to the DiCostanzi apartment. He said he was driven to the apartment where Detective Gockeler opened the door with the key, and he was then taken inside handcuffed and was beaten by the police. He denied that he changed any clothing in the apartment as testified to by the *510 detectives. His sister, Hilda De Lima, testified that defendant lived with her, but admitted that she had been in Puerto Rico for three weeks when she learned that defendant had been arrested.
The court denied the motion to suppress, holding: (1) the arrest of defendant as a disorderly person for violation of N.J.S. 2A:169A-6 was a valid arrest; (2) the search warrant was properly issued, having been based on probable cause to believe a criminal offense had been committed, and (3) the officers had probable cause to arrest defendant for the crime of unlawful possession of narcotics.
Defendant first contends that his arrest on the street without a warrant for violation of N.J.S. 2A:169A-6 (failure of a convicted narcotics offender to notify the chief of police within 24 hours following a change of address) was invalid, citing State v. Orr, 93 N.J. Super. 140 (App. Div. 1966), and since the arrest was illegal, the police had no right to take the apartment key from his possession or to compel him to go with them to the apartment. He further contends that the search of the apartment which resulted in the discovery of the heroin was invalid and the heroin should have been suppressed as evidence because his arrest for possession of narcotics was not made until after the heroin was found  that a search undertaken to uncover evidence in order to arrest is not made lawful because the desired evidence is found. State v. Doyle, 42 N.J. 334, 342 (1964).
In State v. Orr, supra, this court affirmed an order suppressing evidence secured as the result of a search and seizure made incidental to an arrest because the arrest for violation of N.J.S. 2A:169A-6 was invalid, having been made without a warrant. However, in that case the sole reason for Orr's arrest was the alleged violation of the Disorderly Persons Act.
In the instant case, prior to defendant's arrest on the street, the detectives had probable cause to believe that a crime was being committed or had been committed by the defendant. They not only had information from a reliable informer that defendant was engaged in the illegal *511 sale of narcotics, but had personally observed transactions which reasonably justified their belief that the same were illicit sales. Under such circumstances they were lawfully entitled to arrest defendant without a warrant. State v. Contursi, 44 N.J. 422, 428-429 (1965).
We note that while defendant now argues his arrest was illegal, he testified at the hearing that when he was taken into custody the officers did not inform him he was under arrest. However, if, as they testified, the officers told defendant he was being arrested on the disorderly person's charge when they could properly have informed him he was under arrest for the unlawful sale of narcotics, we can see no justification for holding that the arrest was invalid. In State v. Romeo, 43 N.J. 188 (1964), the court concluded that an officer's characterization of his action as an "arrest" was not necessarily determinative of the legal effect of such action. The court said,
"Courts ought not to insist that policemen act on necessary spurs of the moment with all the knowledge and acuity of constitutional lawyers." (At p. 206)
Thus, in the instant case, the officers' mischaracterization of the basis for the arrest should not invalidate it when abundant probable cause to arrest for a criminal offense did, in fact, exist. We are satisfied that the arrest of defendant on the street was a valid arrest and that a search of his person as an incident thereto was proper.
Defendant also argues that the warrant to search the apartment was invalid because it was based on an inadequate affidavit. This contention is without merit. The facts and circumstances set forth in the affidavit, based upon information given by a reliable informer and observations made by the detectives during their surveillance of the apartment, clearly justified a person of ordinary prudence to believe that the law was being violated by the operations conducted in the apartment. State v. Boyd, 44 N.J. 390, 392-393 (1965).
*512 We conclude that the motion to suppress evidence was properly denied.
Defendant next contends that the trial judge, sitting without a jury, should have granted his motion for an acquittal at the close of the case. He argues that there was insufficient evidence to establish his guilt of the crime charged by proof beyond a reasonable doubt. On a motion for judgment of acquittal the test is whether there is any legally competent evidence before the judge, sitting without a jury, from which an inference of guilt can logically and legitimately be drawn. State v. Fiorello, 36 N.J. 80, 90 (1961). We find no substantial basis for challenging the sufficiency of the evidence to support the charge of unlawful possession of narcotic drugs, and hold that the trial judge properly denied the motion.
Finally, defendant contends that there was insufficient evidence to show that he had possession of the heroin found in the apartment. The unqualified term "possess" as used in criminal statutes signifies an intentional control of an illicit article accompanied by knowledge of its character. State v. Reed, 34 N.J. 554, 557 (1961). It includes "constructive possession" as well as actual physical manual possession. State v. Brown, 67 N.J. Super. 450, 454-455 (App. Div. 1961); People v. Embry, 20 Ill.2d 331, 169 N.E.2d 767, 769 (Sup. Ct. 1960). There was ample evidence in this case to indicate that defendant was engaged in the unlawful traffic of heroin at the apartment and that he exercised intentional dominion and control over the illicit drug found there with knowledge of its character.
Assigned counsel for defendant is commended for an exceptional painstaking presentation of this appeal.
The judgment of conviction is affirmed.