FRED MORRIS GLOVER *v.* STATE OF MARYLAND

[No. 348, September Term, 1971.]

*Decided February 14, 1972.*

The cause was argued before MURPHY, C. J., and MOY-LAN and POWERS, JJ.

*Leonard R. Goldstein* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Robert W. King, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Alleged unlawful seizure by police of contraband discarded by appellant is the principal question presented in this appeal. Fred Morris Glover was found guilty by a Prince George's County jury of possession of heroin. He was sentenced by Judge William H. McCullough to serve four years, of which three years was suspended. He appealed.

After the jury was sworn, but before any evidence was taken on the issue of guilt, appellant moved orally to suppress evidence allegedly obtained by an illegal

search and seizure. The evidence consisted of four aluminum foil containers of white powder. In a hearing on the motion out of the presence of the jury appellant testified that at about 2:00 A.M. on October 22, 1970 he left a dance at Glenarden and was driving down the highway when a police car pulled him over. The officer asked for his registration and driver's permit, and told him to get out of the car. He was not told that he was being arrested. While he was standing by his car a detective, who had passed by in another car and parked ahead, jumped in appellant's car. Appellant said the uniformed officer had him in front of the patrol car, and patted him down, and that Detective Howard searched his car. He was put in the patrol car and taken to the precinct. He said that the police showed him some foil containers, but he did not know where they found them, that they had not been in his possession, that he had never seen them before, and that they had not been taken from him.

Detective John O. Lew of the Prince George's County Police testified at the suppression hearing that he was observing from a point facing the right (curb) side of appellant's vehicle, about 50 to 75 feet away, at a garage, and that he observed appellant reach inside his shirt and throw down the heroin, which was then picked up from the ground at the right rear tire of appellant's vehicle. The detective said nothing was seized from appellant's automobile, or from his person. Detective Howard arrested appellant on the scene for possession of heroin.

Upon this evidence the motion to suppress was denied. Under Maryland Rule 729 f. appellant's objection to it was preserved for appeal.

Before the jury, the events of the evening were described in considerably more detail. Additionally it was shown that in the late evening of October 21, 1970, Detectives Lew and Gerald Howard separately stationed themselves so as to observe the entrance of a building at Glenarden where a dance was in progress. They watched appellant outside the building over a period of

time. When appellant left at about 2:00 A.M. on October 22nd, each of the detectives also left, headed in the direction of the District of Columbia on Palmer Highway. By prearrangement, a uniformed officer in a marked patrol car stopped appellant in the Palmer Park area, parking the police car behind appellant's, at the curb. As the officer stepped out of the patrol car, Detective Howard slowly passed, and parked in front of appellant. Detective Lew turned up a side road, and parked at a garage or repair shop, facing the parked cars, about 75 feet away. He watched through binoculars. He said that the uniformed officer held conversation with appellant. They went to the rear of appellant's vehicle, and the officer went back to his cruiser and bent over the seat. Detective Lew saw the appellant reach into the chest area of his shirt and deposit something on the ground. The detective then walked to that point, and with the aid of a flashlight, saw four aluminum foils at the rear of appellant's car near the sewer grate. Detective Howard picked them up, made a field test and then advised appellant that he was under arrest for possession of heroin.

Detective Howard testified that as he passed appellant's car just before parking in front of it he noticed appellant leaning forward next to the steering wheel. As appellant was walking to the back of his car with the uniformed officer, Detective Howard looked under the dashboard and under the front seat of the car, but found nothing.

Adam Sobotka, a chemist with the U. S. Bureau of Narcotics, received the four foils for analysis. Each contained white powder. He made eight individual tests of various types on the contents of each foil. The analysis showed that each contained heroin. He did not attempt to determine what percentage of the total contents of each foil was heroin. He said five micrograms of heroin was the minimum quantity that would give a positive test. Custody of the evidence from the time it was picked up until it was received in evidence was shown, and is not questioned here.

Appellant contends:

1. That it was error not to suppress the evidence.

2. That it was error to allow the conviction without testimony whether the substance found was a controlled dangerous substance.

3. That it was error to allow the conviction under a law which requires that it be liberally construed, in violation of the rule that all criminal laws are to be strictly construed.

### 1.

Maryland Rule 729 sets forth the procedure for determining, either before or at trial, the admissibility as evidence of property claimed to have been obtained by an unlawful search or seizure. The question may be raised by filing a pretrial motion (paragraph b.), but failure to file a pretrial motion does not constitute a waiver of the right to object at the trial (paragraph c.). When the objection is made by oral motion at the trial, as it was here, it is left to the discretion of the court to determine the question as a preliminary matter, or during the trial. In either case, if the trial is before a jury, the hearing on the motion or objection shall be out of the presence of the jury (paragraph d. 2).

Paragraph f. provides that if the ruling is adverse to the accused, his objection to the evidence shall be preserved on appeal, even though no further objection was made to the introduction of such evidence at the trial, and paragraph e. requires that all evidence proffered or submitted in support of or in opposition to such motion, petition or objection shall be included as a part of the record on appeal.

No new objection was made on the ground of unlawful seizure when the foil containers were received in evidence, and none was necessary.

The application and effect of Maryland Rule 729 were extensively discussed in *Winebrenner v. State,* 6 Md. App. 440, 251 A. 2d 610, *Price v. State,* 7 Md. App. 131, 254 A. 2d 219, and *Cleveland v. State,* 8 Md. App. 204,

259 A. 2d 73. It was made clear that the admissibility of the evidence is a matter exclusively for the court, apart from the question of guilt or innocence.

In *Winebrenner, supra,* we said, at page 444:

"The trial should be conducted so as to reflect clearly what testimony and other evidence was received on the issue of the admissibility of the challenged evidence and the ruling of the trial judge as to the legality of the arrest, the reasonableness of the search and seizure and the admissibility of the challenged evidence should be stated by him."

Thus it is that we limit our appellate review to consideration of the evidence that was submitted to the trial judge in the separate hearing, out of the presence of the jury, on the motion to suppress the property as evidence or the objection to its admissibility. That some of the same evidence, and more, was presented to the jury in the trial of the issue of guilt, does not mean that we consider more evidence than that which was before the trial judge on the question of admissibility.

Appellant says in his brief:

"It is clear that the arrest and intent to arrest preceded the search of the area surrounding the Appellant. The search and its product having been the result of an illegal arrest, the separate arrest if deemed such, for a narcotics offense cannot be justified by the incriminating product of the tainted search."

The evidence at the hearing on the issue merely showed that appellant was stopped by a uniformed police officer, who asked for his registration and driver's permit. Appellant said he was not told that he was being arrested. Such a stop and examination were lawful under Code, Art. 66½, §§ 31 and 97. In *Taylor v. State,* 9 Md. App. 402, 264 A. 2d 870, we said that the applicability of these statutes does not depend upon whether the operator

has committed some traffic or other violation of law, and further said that the appellant there was not placed in an arrest status solely because the officer sought to verify these documents.

The Court of Appeals has built a working definition of arrest, set out in *Cornish v. State,* 215 Md. 64, 137 A. 2d 170, as "the detention of a known or suspected offender for the purpose of prosecuting him for a crime." See also *Shorey v. Warden,* 401 F. 2d 474 (CA 4 1968), *Shipley v. State,* 243 Md. 262, 220 A. 2d 585, *Duffy v. State,* 243 Md. 425, 221 A. 2d 653.

We deem it clear that appellant was not placed under arrest until after the questioned evidence was found by the detectives on the ground, and that it was not discovered there as the result of a search, but because appellant was seen to throw it there.

One who abandons or discards property cannot complain with effect of the later seizure of such property by the police, or of its use against him in court. *Jones v. State,* 5 Md. App. 180, 245 A. 2d 897, *Boone v. State,* 2 Md. App. 479, 235 A. 2d 567, *English v. State,* 8 Md. App. 330, 259 A. 2d 822.

The main thrust of appellant's argument, however, is that he did not, in the sense we have discussed, abandon or discard the property; that in disposing of it his action was not voluntary, but was forced by the actions of the officers. He relies upon the principles applied in *Hobson v. United States,* 226 F. 2d 890 (CA 8 1955), *Beale v. State,* 230 Md. 182, 186 A. 2d 213, *Commonwealth of Massachusetts v. Painten,* 368 F. 2d 142 (CA 1 1966), *Fletcher v. Wainwright,* 399 F. 2d 62 (CA 5 1968), *State v. DeGrazio,* 39 N. J. 268, 188 A. 2d 399 (1963), and *State v. Orr,* 93 N. J. Super. 140, 225 A. 2d 157 (1966).

In every one of the cases cited, the seized property, held to have been seized unlawfully, was thrown or otherwise discarded *out of a window of the premises of the accused while police officers were seeking to gain unlawful entry into those premises,* and such entry was in progress or was imminent.

*Hobson* and *Beale* seem to be grounded on the fact that the seized property, *after* being thrown from a window, *remained* within the curtilage of the accused and thus upon protected premises. In *Beale* the Court of Appeals, at pages 186 and 187, quoted with approval from *Hobson* and went on to say, at page 187:

> "In this case, as in *Hobson*, the back yard was a part of the curtilage surrounding the dwelling. Here, as there, the action of the defendant in disposing of the prohibited materials was not voluntary but was forced by the actions of the officers. And here, as there, but for the seizure and examination of the jettisoned materials there would have been no incriminating evidence."

In *Painten*, *DeGrazio* and *Orr* the premises involved were apartments, and none of these rulings appeared to turn on whether the seized property was or was not upon protected premises after the defenestration and when found and seized by the police, but said that the act was a direct result of an unlawful infringement of the sanctity of the home.

The United States Court of Appeals in *Fletcher* discussed and specifically rejected the contention that even though without arrest warrant, search warrant or probable cause, a seizure would not be illegal unless made within a constitutionally protected area. Stolen jewelry was found outside the window of a motel room after the occupants fled while officers (without warrant or probable cause) were attempting to gain admittance and were kicking down the door. The court there said of the "curtilage" concept, at page 64:

> "It presents no relevant considerations that aid in solving a situation where after an unconstitutional invasion of a protected area an item of evidence is hurled out of the window as a direct reaction to the illegal conduct."

The court further said:

> "These considerations demonstrate that in this case whether appellant had a proprietary interest in the area where the evidence was seized is irrelevant. Indeed, the proprietary-interest approach has been criticized generally because it clouds the issues of privacy and public security that should be the focal point of fourth-amendment adjudication. See *Warden, Maryland Penitentiary v. Hayden,* 1967, 387 U. S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782; *State of Texas v. Gonzales, supra* at 148. Therefore, since the initial entry was improper and the items were thrown out the window as a direct result of that illegality, the police were not entitled to the fruits and the admission of the jewelry in evidence was reversible error."

Since the Court of Appeals of Maryland held the seizure in *Beale* unlawful because the property was seized within the curtilage of the accused, a constitutionally protected area, that case appears to be sufficient authority for us to hold that the seizure of the heroin discarded by Glover, appellant here, upon a public highway, was lawful. However, we need not rest our decision on the "protected area" aspect of *Beale.*

Even if it should be irrelevant, as *Fletcher* says, that appellant had no proprietary interest in the area where the evidence was seized, we hold that the seizure was lawful. The action of appellant in disposing of the property before its seizure was the result of his own voluntary choice, and was not forced by the actions of the officers. The stop by the uniformed officer was, as we have shown, lawful. Appellant had not been arrested at that time. If Detective Howard's search of the car is assumed to have been unlawful, it had been completed. An unlawful search of the car did not mean that an unlawful search of the person would necessarily follow. In each of the cases appellant relies upon, there was an imminent search of the

premises where the property was located and from which it was thrown. If appellant was in fact "patted down", as he says, such action would be more likely to lead him to believe that he had "passed the test", than to believe that another search of his person was imminent.

We hold that the trial judge correctly denied the motion to suppress the evidence.

### 2.

The chemist testified as an expert that he made tests of the contents of each of the four foil containers and that each contained heroin. He did not determine how much of each was heroin and how much was some other substance. Since the evidence did not show the quantity of pure heroin in the compound possessed by appellant, he argues that the evidence did not show that the quantity of heroin he possessed was a "controlled dangerous substance". He interprets that term in the light of the legislative declaration of policy found in Code, Art. 27, § 276 (a) that it is necessary to control dangerous substances "to prevent their abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland."

Appellant argues that a minute amount of heroin in a compound does not make the compound dangerous, any more than a gallon of water containing a single drop of poison would be dangerous. The argument is not valid. It is not the other ingredients of a compound which it is unlawful to possess; it is the heroin, and the statute does not deal in quantities, minimum or otherwise. Code, Art. 27, § 277 (f) defines a controlled dangerous substance as "any drug, substance or immediate precursor in Schedules I through IV of this subheading." "Heroin" is sub-item b. 6. of Schedule I, contained in § 279. Thus heroin, without regard to quantity, is, by legislative enactment, a controlled dangerous substance, and its possession is unlawful. The statute needs no construing. Its intent is perfectly clear.

*3.*

Appellant argues that a conviction under the statute should not be allowed, because § 276 provides that the subheading is to be liberally interpreted and construed so as to effectuate its general purpose. He says this flies in the face of the general rule that criminal laws are to be strictly construed for the protection of the accused.

The answer to this contention is found in *State v. Fleming,* 173 Md. 192, 195 A. 392, cited by appellant, where the Court of Appeals quoted, at page 196:

> "Primarily, the intention of the Legislature must be sought in the words employed to express it. If the meaning of the language used be plain and unambiguous, the Legislature must be understood to intend what is plainly expressed, and nothing then remains but to give the intent effect."

The point was reiterated by that Court in *Slagle v. State,* 243 Md. 435, 221 A. 2d 641, when it said, at page 438:

> "The language used in these sections is clear and unambiguous and the Legislature must be understood to intend what is plainly expressed."

There is nothing in the application of the statute to appellant which requires us to interpret or construe the legislative intent. The intent to make possession of heroin unlawful is plainly expressed, and is clear.

*Judgment affirmed.*