556 A.2d 1158

**Ayudhia S. NARAIN**

v.

**STATE of Maryland.**

**No. 1263, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

May 2, 1989.

386

Brian J. Murphy (Stanley H. Needleman, on the brief), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alan L. Winik, State's Atty. for Frederick County of Frederick, on the brief), for appellee.

Argued before MOYLAN, BLOOM and ROBERT M. BELL, JJ.

MOYLAN, Judge.

The appellant, Ayudhia S. Narain, was convicted in the Circuit Court for Frederick County of 1) possession of cocaine with intent to distribute, 2) possession of marijuana with intent to distribute, and 3) carrying a concealed deadly weapon. Upon this appeal, the appellant's only contention is that a prehearing suppression judge erroneously failed to exclude the physical evidence.

The State called a single witness at the suppression hearing, Officer Jeffrey Hutchinson. Officer Hutchinson described a scene very much like that dealt with by the Supreme Court in *Michigan v. Chesternut*, 486 U.S. ——, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). On the night of April 25, 1987, the officer drove up to the corner of Saint and Ice Streets in Frederick City. Seven or eight persons were standing on the corner and, upon the approach of the police, all of them ran. There was an extensive chase of the appellant, in the course of which the appellant ran through an alley, jumped or "cleared" four fences, and hit a wall which caused him to flip over it. According to the appellant, he discontinued his flight when he "ran into this big wall." As the appellant described events, as the policeman "grabbed" or "tousled" with him, the appellant's hat fell off, which hat contained the narcotics. Officer Hutchinson, on the other hand, testified that as the chase twisted and turned through a number of streets and alleys and as the appellant approached a dead-end, he tried to throw the hat over a fence. The hat got caught on barbed wire on top of the fence, however, and the contraband was recovered.

There never was a ruling as to whether the appellant was seized within the contemplation of *Michigan v. Chesternut, supra*, or not.[1] Under the circumstances, there was no ruling as to whether the seizure (if there was one) was reasonable. No rulings were made on those respective issues of Fourth Amendment applicability and Fourth

---

1. As to the Fourth Amendment merits, see the very thorough discussion in *Hawkins v. State*, 77 Md.App. 338, 550 A.2d 416 (1988).

Amendment satisfaction because of the suppression hearing judge's preliminary ruling that the appellant had no standing to object. The trial court, as was its prerogative, believed Officer Hutchinson's testimony that the appellant tossed the hat and its contents away just before being caught by the policeman. On that basis alone and without considering the scope or propriety of the chase, the court found that the property had been abandoned.[2]

It logically followed from the finding of abandonment that the appellant lacked standing to object to the seizure of property that was no longer his.[3] The absence of standing meant that the appellant was not entitled to litigate the Fourth Amendment merits. The suppression hearing, therefore, never considered those merits.

In this case, however, the Fourth Amendment merits cannot be so easily finessed. Although ordinarily there must be a finding of antecedent Fourth Amendment applicability before a court is even required to consider the merits of Fourth Amendment satisfaction or violation, in this case the merits play a necessary preliminary role in the very determination of applicability. As Judge Orth pointed out

**2.** The leading academic discussion of the law of abandonment in the context of a criminal case is Mascolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis*, 20 Buffalo L.Rev. 399, 400–401 (1971) (hereinafter *Mascolo* ):

"The significance of abandoned property in the law of search and seizure lies in the maxim that the protection of the fourth amendment does not extend to it. Thus, where one abandons property, he is said to bring his right of privacy therein to an end, and may not later complain about its subsequent seizure and use in evidence against him. In short, the theory of abandonment is that no issue of search is presented in such a situation, and the property so abandoned may be seized without probable cause." (Footnotes omitted).

**3.** *Mascolo* goes on, at 402–403:

"In view of the fact that whenever an individual discards personal property, he runs the potential risk of exposing himself to a claim of abandonment which, if proved, will divest him of any interest therein, the question naturally arises whether such discard deprives him of the requisite standing to complain." (Footnote omitted).

for the Court of Appeals, in *Duncan and Smith v. State,* 281 Md. 247, 263, 378 A.2d 1108 (1977):

"The abandonment doctrine is not without limitations. It does not apply when the abandonment was the result of an unlawful police action. *Beale v. State,* 230 Md. 182, 186 A.2d 213 (1962). *See Hobson v. United States,* 226 F.2d 890 (8th Cir.1955); *Glover v. State,* 14 Md.App. 454, 287 A.2d 333 (1972), *cert. denied,* 265 Md. 737 (1972)." (Footnote omitted).

The fountainhead of the Maryland law in this regard is the Court of Appeals decision in *Beale v. State,* 230 Md. 182, 186 A.2d 213 (1962). In *Beale,* contraband drugs were thrown out of the window of a dwelling house as the police were making an unlawful entry through the front door. In holding that the seizure of the discarded drugs was illegal, the Court of Appeals relied primarily on *Hobson v. United States,* 226 F.2d 890, 894 (8th Cir.1955):

"Considering the total atmosphere of the case ... we cannot separate the throwing of the package from the unlawful search. The defendant's action in throwing the package was not voluntary but was forced by the actions of the officers. That the officers anticipated such a result is evidenced by the fact that they stationed a man in the back yard to receive any person or evidence that might come out. The throwing of the package was directly caused by the actions of the officers."

Analogizing the situation before it to that before the *Hobson* Court, the Court of Appeals concluded, at 230 Md. 187, 186 A.2d 213:

"In this case, as in *Hobson,* the back yard was a part of the curtilage surrounding the dwelling. Here, as there, the action of the defendant in disposing of the prohibited materials was not voluntary but was forced by the actions of the officers. And here, as there, but for the seizure and examination of the jettisoned materials there would have been no incriminating evidence."

Judge Powers applied these principles in *Glover v. State,* 14 Md.App. 454, 460, 287 A.2d 333 (1972):

"One who abandons or discards property cannot complain with effect of the later seizure of such property by the police, or of its use against him in court. *Jones v. State,* 5 Md.App. 180, 245 A.2d 897, *Boone v. State,* 2 Md.App. 479, 235 A.2d 567, *English v. State,* 8 Md.App. 330, 259 A.2d 822.

The main thrust of appellant's argument, however, is that he did not, in the sense we have discussed, abandon or discard the property; that in disposing of it his action was not voluntary, but was forced by the actions of the officers. He relies upon the principles applied in *Hobson v. United States,* 226 F.2d 890 (CA 8 1955), *Beale v. State,* 230 Md. 182, 186 A.2d 213, *Commonwealth of Massachusetts v. Painten,* 368 F.2d 142 (CA 1 1966), *Fletcher v. Wainwright,* 399 F.2d 62 (CA 5 1968), *State v. DeGrazio,* 39 N.J. 268, 188 A.2d 399 (1963), and *State v. Orr,* 93 N.J.Super. 140, 225 A.2d 157 (1966)."

In holding that the evidence had been voluntarily abandoned, we hinged that decision upon the pivot of the police behavior's having been reasonable:

"The action of appellant in disposing of the property before its seizure was the result of his own voluntary choice, and was not forced by the actions of the officers. The stop by the uniformed officer was, as we have shown, lawful."

14 Md.App. at 462, 287 A.2d 333. These principles of law were well summarized by *Mascolo,* at 407–408:

"From this primary emphasis upon the legality of law enforcement activity has evolved the rule that if an individual discards or throws away evidence as a direct consequence of the unlawful presence of peace officers, his act will not be considered a voluntary abandonment, but rather a forced response to the unauthorized presence. Therefore, the fact that the discard openly reveals the nature of the property will not alter the result so as to permit seizure under the 'open view' doctrine.

Closely allied to this situation is the one involving an illegal arrest. Here, too, the discard will not be con-

sidered voluntary if it was prompted by the attempted or executed illegal seizure of defendant. The reasoning behind the refusal to find abandonment in these cases is that since there has been an illegal arrest, there can be no abandonment as a matter of law, because the 'primary illegality would taint the [purported] abandonment. . . .' " (Footnotes omitted).

If, in the present case, the appellant threw away the hat and its contents only because of a chase that amounted to an improper seizure of his person, that would not constitute an abandonment of the property so as to foreclose his reaching the Fourth Amendment merits.

■ Under the circumstances of this case, the judgments of conviction as well as the ruling of the suppression hearing judge will have to be vacated and the case will have to be remanded for a determination, in the first instance, of whether the circumstances of this particular police chase amounted to a seizure of the person within the guidelines of *Michigan v. Chesternut.* If not, the appellant lacked standing and the evidence was properly admitted. If, on the other hand, there was a seizure of the person, there will have to be a further determination of whether that seizure was reasonable under the Fourth Amendment. If so, the appellant would still lack standing and the evidence would, therefore, have been properly admitted. If, however, 1) there was a seizure of his person and 2) that seizure was unreasonable, there was no abandonment and the appellant retained the necessary standing to litigate the constitutionality of the seizure of his property. In the unusual posture of this case, of course, it is a foregone conclusion that he would prevail upon those merits in that event.

■ Paradoxically, there must be a consideration of the Fourth Amendment merits preliminarily in order to deter-

mine whether it is even necessary to address the Fourth Amendment merits directly.[4]

---

**4.** The paradox would appear to be the product of an analytic flaw in the prevailing case law. What we are about to suggest will have no effect whatever on the practical outcome of any admissibility determination. It may pinpoint, however, some imprecise analysis.

The route to the constitutional admissibility of physical evidence in a criminal case is sometimes a one-stage process and sometimes a two-stage one. The one-stage process is where the Fourth Amendment is found to be inapplicable (because, for instance, the defendant lacks standing to object) and it is unnecessary even to address the Fourth Amendment merits before admitting the evidence. The two-stage process is where the defendant *has* standing to object and is, therefore, entitled to reach the Fourth Amendment merits, but then loses upon those merits. Again, the evidence comes in—but for a different reason. In the second case, the evidence was reasonably seized; in the first case, we are unconcerned with whether it was or not.

Under the prevailing case law, if the police "pressure" is improper, the evidence is deemed not to have been abandoned. The defendant, therefore, has standing to litigate the Fourth Amendment merits and, as a foregone conclusion, prevails upon the merits. Under the prevailing case law, if the police "pressure" is, on the other hand, proper, the evidence is deemed to have been abandoned and the defendant is not entitled even to reach the Fourth Amendment merits. The evidence comes in unchallenged.

On the issue of "bottom-line" admissibility, therefore, the reasonableness of police behavior is of controlling importance. The case law, however, appears to have confused this issue of "bottom-line" admissibility with the sub-issue of which route to travel to determine that admissibility. It reaches the correct result but, in rushing directly to the result, skips an intermediate step in the reasoning process.

Under what we think is a better analysis, if the police "pressure" is proper, the evidence should still be deemed not to have been abandoned and the defendant should still be entitled to reach the Fourth Amendment merits. He would, however, promptly lose upon those merits because the police would have been reasonable 1) in chasing him in the first instance and 2) in recovering the objects thrown away by him in the course of the chase. If the character as probable evidence of an object jettisoned by a fleeing suspect is not apparent on its face, the very circumstances of the jettisoning would suffice in that regard.

The abandonment of property by an owner or possessor involves a question of intent and is measured from the vantage point of that owner or possessor. It is not measured from the vantage point of the policeman and is not concerned with the reasonableness of police behavior. Abandonment is the voluntary relinquishment of any further interest in the property. If a possessor, however, is forced or coerced by external circumstances to forego immediate physical con-

Our remand for a more thorough-going suppression hearing is a contingent one. *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981); *Bates v. State,* 64 Md.App. 279, 494 A.2d 976 (1985). The viability of the judgments of conviction will abide the results of the suppression hearing on remand.

JUDGMENTS OF CONVICTION VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY FREDERICK COUNTY.

---

trol, that is not considered to be an intentional abandonment. If the possessor distances himself from his property simply to avoid being caught "red-handed" with incriminating evidence, his intention with respect to his property is a constant whether the police are acting reasonably or unreasonably. Indeed, if the possessor were sufficiently astute to assess in advance the constitutionality of the police behavior, he would be under far greater pressure, in terms of likely incrimination, from proper police behavior than from improper behavior. On the isolated question of whether an owner is acting voluntarily or under pressure, the owner is realistically unconcerned with whether the pressure is legal or illegal. On the issue of abandonment, moreover, it is only the owner's state of mind that counts.

All of this may be, we candidly acknowledge, a philosophical tempest in a teapot. Under either framework of analysis, reasonable police behavior will yield, as it should, constitutionally admissible evidence. To us, however, it makes infinitely greater sense for the propriety of the police behavior to be a factor in stage two of the two-step analysis, which is concerned with the reasonableness and propriety of police behavior, than in stage one, which should be focused upon the intent of a possessor, as to which the propriety of police behavior is irrelevant.